## SUPREME COURT.

### The People, on the relation of Gabriel Disosway agt. John L. Flake and others.

The defendants were appointed referees to hear and determine certain appeals from an order made by two of the commissioners of highways of the town of Westfield, Richmond county, for the laying out of a highway in that town.

*Held*, that such referees take the place of the judges (of the former court of common pleas,) whose *functions they exercise, and in whose stead they are sub*stituted. They become a court of inferior jurisdiction, within the meaning of § 318 of the Code. The proceeding before them is also a special proceeding under § 3 of the Code.

Upon a review of the decision of such referees by *certiorari*, the court may award *costs* under § 318 of the Code, " according to the nature of the case."

Although the referees in this case were guilty of extreme impropriety in setting to hear the cases of their own near kinsmen, which they had no jurisdiction to do, and which rendered their proceedings void, they acted, nevertheless, as a *court*. Their error was an error of judgment, at least in the view of this court.

The referees, therefore, were not charged with the costs personally, (although the court might have done so, on a reversal of their decision,) but costs were ordered to the relator in this court, as if in an action at issue, or an issue of law, to be collected by tax from the town of Westfield.

The People, on the relation of Disosway agt. Flake and others.

*At Chambers, August*, 1857. .

APPLICATION for direction as to costs.

WM. EMERSON, *for the relator*.
LOTT C. CLARK, *for defendants*.

BIRDSEYE, Justice.   By 1 *R. S.* 518, § 100, 84, any person who conceived himself aggrieved by any determination of the commissioners of highways, either in laying out, altering or discontinuing any road, might, at any time within sixty days thereafter, appeal to any three of the judges of the court of common pleas of the county in which such road was situated.   By other provisions of the same statute, the judges to whom the first appeal from such a determination should be made, were to have exclusive jurisdiction of all appeals from the same determination, to the end that their decision, when made, might embrace the whole subject.   Notice of their proceedings on the appeal, were to be given to the parties in interest.   The judges were to convene at the time appointed, and to hear the proofs and allegations of the parties.   They had power to issue process to compel the attendance of witnesses, and could adjourn from time to time as might be necessary.   Their decision, or that of two of them, was to be conclusive ; was to be in writing, and signed by the judges making it, and to be filed and recorded in the office of the town clerk of the town.

In all these proceedings, there can be no doubt these judges were discharging a judicial function.   They acted as judges. They rendered a judicial determination, one which had the force and effect of a judgment, and was as such, capable of review in this court, by the proper proceedings for that purpose.   They composed, in short, a statutory court of inferior jurisdiction, and were required to take cognizance of certain special proceedings.

The power which the Revised Statutes had thus conferred on any three of the five judges of the court of common pleas, was by chap. 180 of the laws of 1845, to be exercised thereafter, only by the first judge, or in case of his interest or disability,

NEW-YORK PRACTICE REPORTS. 529

The People, on the relation of Disosway agt. Flake and others.

or of a vacancy in his office, then by any other disinterested county judge of the county, with a right of appeal to two other judges of the same county.

When the constitution of 1846, abolished the office of judge of the common pleas, together with the court itself, a new system was required for the hearing of those appeals. It was provided by chap. 455 of the laws of 1847. By § 10 of this act, the appeal was to be taken to the county judge. Thereupon the county judge, or in case of his residence in the town, or of his being disqualified from acting, by interest or relationship, then one of the justices of the sessions, was to appoint in writing, three disinterested freeholders as referees, to hear and determine that and all other appeals which should be taken. These referees were to possess all the powers and discharge all the duties theretofore possessed by the three judges of the court of common pleas, under the provisions of the Revised Statutes above referred to, and, before proceeding to hear the appeals, were to be duly sworn, faithfully to hear and determine the matters referred to them.

It has been held by the court of appeals, (4 Seld. 476,) that the referees thus appointed, have all the powers and are charged with all the duties formerly possessed by the three judges of the court of common pleas, under the provisions of the Revised Statutes. On reversing the determination of the commissioners appealed from, which refused to lay out the highway, they are bound to make such an order in relation to laying out the highway, as in their judgment, the commissioners should have made.

Clearly, they take the place of the judges whose functions they exercise, and in whose stead they are substituted. They become a court of inferior jurisdiction, within the meaning of § 318 of the Code. The proceeding before them is also a *special proceeding* under § 3 of the Code. (See *Haviland* agt. *White*, 7 *How. Pr. R.* 157.)

The defendants were thus appointed referees, to hear and determine certain appeals from an order made by two of the com-

missioners of highways of the town of Westfield, Richmond county, for the laying out of a highway in that town.

They reversed the order. Their decision was brought into this court for review by *certiorari*. Upon a hearing, their determination was set aside, with costs.

I can see no good reason for doubting that this is a case in which costs may be awarded under § 318 of the Code, though the review has been had by *certiorari*. (*Haviland* agt. *White, ubi sup.*)

By that section, the costs are to " be awarded and collected in such manner as the court shall direct, according to the nature of the case." The relator now applies for that direction.

That he is entitled to his costs is already determined ; and I am satisfied from the present review of the case, with entire justice and propriety. I do not, however, feel inclined to visit those costs upon the referees, who are now defendants personally, as is claimed by the relator. They were, indeed, guilty of extreme impropriety in setting to hear the cases of their own near kinsmen. They had no jurisdiction so to do. And their proceedings were void. But they acted nevertheless as a court. Their error is an error of judgment, at least in the view of this court, and no obliquity of motive is to be imputed to them. They should not, therefore, be charged with the costs of the appeal.

Neither should the appellants. They had, and could have, no share in the appointment of the referees. True, they insisted, improperly and erroneously, at the hearing, that the referees had jurisdiction and should exercise it. I think the court might impose on them the payment of these costs : for their conduct has assisted in bringing about the indecorous spectacle presented at the hearing below. But the question was, to a certain extent new : they were anxious to obtain a decision favorable to themselves, and were blinded by their feelings to the impropriety of the course they adopted.

On the whole, I think the proper direction, under all the circumstances of the case is, that the costs of the relator in this court, as of an action at issue, on an issue of law, be awarded against and collected of the town of Westfild; and that the

amount thereof be collected by a tax, as a part of the town charges of that town, in the next levy of taxes, and be paid over to the relator or his attorney.   The relator may also have $10, costs of this motion.